Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/20/2016 11:06 AM CDT

Brian J. Adams, appellant, v.
State of Nebraska Board of
Parole et al., appellees.

___ N.W.2d ___

Filed May 20, 2016.    No. S-15-612.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a
   motion to dismiss is reviewed de novo.
2. **Constitutional Law: Statutes.** The constitutionality of a statute pre-
   sents a question of law.
3. **Declaratory Judgments: Appeal and Error.** When a declaratory judg-
   ment action presents a question of law, an appellate court has an obliga-
   tion to reach its conclusion independently of the conclusion reached by
   the trial court with regard to that question.
4. **Constitutional Law: Statutes: Presumptions.** A statute is presumed
   to be constitutional, and all reasonable doubts are resolved in favor of
   its constitutionality.
5. **Constitutional Law: Statutes: Proof.** The burden of establishing the
   unconstitutionality of a statute is on the one attacking its validity.
6. ____: ____: ____. The unconstitutionality of a statute must be clearly
   established before it will be declared void.
7. **Constitutional Law.** Nebraska's separation of powers clause prohibits
   the three governmental branches from exercising the duties and preroga-
   tives of another branch.
8. ____. The separation of powers clause prohibits a branch from improp-
   erly delegating its own duties and prerogatives—except as the constitu-
   tion directs or permits.
9. **Constitutional Law: Judicial Construction.** Deciding whether the
   Nebraska Constitution has committed a matter to another governmental
   branch, or whether the branch has exceeded its authority, is a delicate
   exercise in constitutional interpretation.
10. **Constitutional Law: Probation and Parole.** The Nebraska Constitution
    vests the Board of Parole with the power to grant paroles.

11. **Legislature: Sentences: Probation and Parole.** The Legislature has declared that every committed offender shall be eligible for parole when the offender has served one-half the minimum term of his or her sentence, as adjusted for good time.

12. **Constitutional Law: Intent.** Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary.

13. **Constitutional Law: Courts: Intent.** If the meaning is clear, the Nebraska Supreme Court gives a constitutional provision the meaning that laypersons would obviously understand it to convey.

14. **Constitutional Law: Criminal Law: Probation and Parole.** The conditions clause of Neb. Const. art. IV, § 13, gives the Board of Parole power to grant paroles after conviction and judgment, under such conditions as may be prescribed by law, for any offenses committed against the criminal laws of this state except treason and cases of impeachment.

15. **Constitutional Law: Legislature: Probation and Parole.** The conditions clause of Neb. Const. art. IV, § 13, permits the Legislature to enact laws placing conditions on when a committed offender is eligible for parole.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Jonathan J. Papik and Stephen E. Gehring, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and James D. Smith for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, and KELCH, JJ., and RIEDMANN, Judge.

CASSEL, J.

## INTRODUCTION

As interpreted by this court, a statute[1] disqualifies a convicted offender sentenced to life imprisonment from parole eligibility until the life sentence is commuted to a term of years.

---

[1] Neb. Rev. Stat. § 83-1,110(1) (Reissue 2014).

An inmate challenged the statute's constitutionality, claiming that it violated the constitutional authority of Nebraska's Board of Parole (Board) to grant paroles.[2] The district court disagreed and dismissed the action. Because we conclude that the statute properly exercises the Legislature's constitutional power to prescribe "conditions" for paroles,[3] we affirm the judgment of the district court.

## BACKGROUND

Occasionally, the constitutional separation of powers[4] generates a dispute between two separate and coequal branches of state government. The Nebraska Constitution confers on the Board the power to grant paroles. The constitution also empowers the Legislature to define crimes and fix their punishment.[5] But in the case before us, both branches agree that the Board lacks the power to do what the inmate desires. Thus, the dispute is between the inmate and the State.

The dispute focuses on a provision conferring upon the Board, or a majority of its members, the "power to grant paroles after conviction and judgment, *under such conditions as may be prescribed by law*, for any offenses committed against the criminal laws of this state except treason and cases of impeachment."[6] We will refer to the italicized language as the "conditions clause."

A Nebraska statute addresses parole eligibility. Section 83-1,110(1) provides:

> Every committed offender shall be eligible for parole when the offender has served one-half the minimum term of his or her sentence as provided in sections 83-1,107 and 83-1,108. The board shall conduct a parole review

---

[2] See Neb. Const. art. IV, § 13.

[3] See *id.*

[4] See Neb. Const. art. II, § 1.

[5] See *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

[6] Neb. Const. art. IV, § 13 (emphasis supplied).

not later than sixty days prior to the date a committed offender becomes eligible for parole as provided in this subsection, except that if a committed offender is eligible for parole upon his or her commitment to the department, a parole review shall occur as early as is practical. No such reduction of sentence shall be applied to any sentence imposing a mandatory minimum term.

Because it is impossible to determine when an offender has served one-half of a life sentence, we have interpreted § 83-1,110(1) to mean that an inmate sentenced to life imprisonment is not eligible for parole until the Board of Pardons commutes the sentence to a term of years.[7]

Brian J. Adams, an inmate serving two sentences of life imprisonment, brought a declaratory judgment action against the Board and its individual members. He sought a determination that § 83-1,110(1) was an unconstitutional usurpation of the authority conferred upon the Board and a declaration that he was eligible for parole. The Board and its individual members, in their official capacities, filed a motion to dismiss for failure to state a claim upon which relief could be granted.

The district court granted the motion to dismiss Adams' complaint. The court reasoned that the commutation requirement was a "condition" prescribed by the Legislature within the meaning of the conditions clause and that the conditions clause authorized the Legislature to condition parole eligibility on the commutation of a life sentence, as long as the offender was not convicted of treason or impeachment. The court concluded that the conditions clause "reserves to the Legislature the ability to add to or subtract from the [Board's] power to grant paroles in all cases except in cases of treason or impeachment."

Adams filed a timely appeal, and we granted his petition to bypass review by the Nebraska Court of Appeals.

---

[7] See *Poindexter v. Houston*, 275 Neb. 863, 750 N.W.2d 688 (2008).

## ASSIGNMENTS OF ERROR

Adams assigns three errors but, restated and consolidated, they present one issue: Whether the district court erred in concluding that § 83-1,110(1) does not violate Neb. Const. art. IV, § 13.

## STANDARD OF REVIEW

[1-3] A district court's grant of a motion to dismiss is reviewed de novo.[8] The constitutionality of a statute presents a question of law.[9] When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.[10]

## ANALYSIS

### Principles Governing Constitutional Challenge

[4-6] The principles applicable to a constitutional challenge to a state statute are well known. A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality.[11] The burden of establishing the unconstitutionality of a statute is on the one attacking its validity.[12] The unconstitutionality of a statute must be clearly established before it will be declared void.[13]

### Separation of Powers

[7-9] Nebraska's separation of powers clause[14] prohibits the three governmental branches from exercising the duties and

---

[8] *Neun v. Ewing*, 290 Neb. 963, 863 N.W.2d 187 (2015).

[9] *Thompson v. Heineman*, 289 Neb. 798, 857 N.W.2d 731 (2015).

[10] *Board of Trustees v. City of Omaha*, 289 Neb. 993, 858 N.W.2d 186 (2015).

[11] *Big John's Billiards v. State*, 288 Neb. 938, 852 N.W.2d 727 (2014).

[12] *Id.*

[13] *Id.*

[14] Neb. Const. art. II, § 1.

prerogatives of another branch.[15] It also prohibits a branch from improperly delegating its own duties and prerogatives—except as the constitution directs or permits.[16] Deciding whether the Nebraska Constitution has committed a matter to another governmental branch, or whether the branch has exceeded its authority, is a delicate exercise in constitutional interpretation.[17]

All three governmental branches play a part in a convicted offender's sentencing. The Legislature declares the law and public policy by defining crimes and fixing their punishment. The responsibility of the judicial branch is to apply those punishments according to the nature and range established by the Legislature.[18] The executive branch exercises prosecutorial discretion.[19] This includes the power to determine what, if any, charges should be brought against a person accused of committing a crime.[20] And another function of the executive branch is to commute sentences and to grant paroles and pardons.[21]

[10] The Board falls under the executive branch, and its powers are prescribed by the Nebraska Constitution and by statute. The constitution vests the Board with the power to grant paroles.[22] A statute authorizes the Board to, among other things, "[d]etermine the time of release on parole of committed offenders eligible for such release,"[23] "[f]ix the conditions

---

[15] *In re Petition of Nebraska Community Corr. Council*, 274 Neb. 225, 738 N.W.2d 850 (2007).

[16] *Id.*

[17] *Id.*

[18] *State v. Huff, supra* note 5.

[19] See *Polikov v. Neth*, 270 Neb. 29, 699 N.W.2d 802 (2005).

[20] *Id.*

[21] See *State v. Bainbridge*, 249 Neb. 260, 543 N.W.2d 154 (1996).

[22] See Neb. Const. art. IV, § 13.

[23] Neb. Rev. Stat. § 83-192(1)(a) (Reissue 2014).

of parole . . . ,"[24] and "[d]etermine the time of discharge from parole."[25]

[11] While the Board determines release on and from parole, fixing eligibility for parole consideration is within the province of the Legislature. The Legislature has declared that "[e]very committed offender shall be eligible for parole when the offender has served one-half the minimum term of his or her sentence . . . ," as adjusted for good time.[26] The Legislature has also provided that certain offenders must complete evaluations and programming before being considered eligible for parole.[27] And the Legislature prescribes when the Board shall review the record of a committed offender based on the offender's parole eligibility date.[28]

## CONDITIONS CLAUSE

[12,13] As in statutory interpretation, the construction of constitutional provisions requires us to apply basic tenets of interpretation.[29] Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary.[30] If the meaning is clear, we give a constitutional provision the meaning that laypersons would obviously understand it to convey.[31]

[14] The conditions clause gives the Board "power to grant paroles after conviction and judgment, under such conditions as may be prescribed by law, for any offenses committed

---

[24] § 83-192(1)(b).

[25] § 83-192(1)(c).

[26] See § 83-1,110(1).

[27] See Neb. Rev. Stat. § 83-1,112.01 (Reissue 2014).

[28] See § 83-192(1)(f).

[29] *Conroy v. Keith Cty. Bd. of Equal.*, 288 Neb. 196, 846 N.W.2d 634 (2014).

[30] *Id.*

[31] *Id.*

against the criminal laws of this state except treason and cases of impeachment." Adams contends that the conditions clause prohibits the Legislature from imposing conditions upon when an offender, other than one convicted of treason or upon impeachment, may become eligible for parole. We disagree.

[15] The plain language of the conditions clause recognizes that the Legislature may place conditions on parole eligibility. The conditions clause confers on the Board the power to grant paroles for any offenses except treason and cases of impeachment. But the conditions clause permits the Legislature to enact laws placing conditions on when a committed offender is eligible for parole. Thus, a committed inmate must meet statutory requirements—i.e., "conditions"—before being considered eligible for parole. But once eligible for parole, the Board alone has authority to grant parole—the Legislature has no power over the decision whether to grant release on parole. We conclude that § 83-1,110(1) does not infringe on the Board's authority to grant paroles.

Adams first argues that because the conditions clause gives the Board the power to grant paroles for "any offenses" aside from treason or cases of impeachment, the Board must be authorized to grant paroles in all other cases. It is—so long as the offender is eligible for parole.

But Adams extends this argument and, in so doing, misapprehends the Legislature's constitutional authority. He contends that the Legislature may not restrict the Board's power by a statute limiting eligibility for parole. But if the Board had the power to parole any committed offender—without adhering to any conditions on eligibility made by the Legislature—the Legislature's authority to determine penalties, including the length of time an offender must serve (absent a pardon or commutation), would be meaningless. Allowing the Legislature the ability to place conditions on parole eligibility strikes a balance between the power of the Legislature to define punishments and the power of the Board to grant

paroles to eligible offenders. And we note that a committed offender deemed to be ineligible for parole by virtue of a life sentence may become eligible for parole upon commutation of the sentence by the Board of Pardons, a department of the executive branch.

## HISTORY

Finally, we address Adams' assertion that the history of the conditions clause demonstrates its intent was to allow the Legislature only to establish conditions that a parolee must follow in order to maintain his or her parole status. To the contrary, the history of article IV, § 13, supports our interpretation of the conditions clause.

The Nebraska Constitution initially gave clemency power to the Governor alone. The conditions clause stated in part:

> The governor shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses, except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by laws relative to the manner of applying for pardons.[32]

Thus, the Governor alone had the power to grant a pardon, but the Legislature was authorized to control the manner of applying for a pardon.

A statute enacted in 1893 further gave the Governor the power to parole any prisoner, subject to certain conditions.[33] The Governor could parole any prisoner, other than one convicted of murder in the first or second degree, "who may have served the minimum term provided by law for the crime for which he was convicted (and who has not previously been convicted of a felony and served a term in any penal institution

---

[32] Neb. Const. art. V, § 13 (1875).

[33] See Comp. Stat. § 7305 (1897).

within the United States of America)."[34] The Governor was authorized to parole a prisoner convicted of murder in the first or second degree "who has now, or hereafter shall have served twenty-five full years."[35] Through this statute, the Legislature placed conditions on a prisoner's eligibility for parole by the Governor.

The conditions clause was amended following the Nebraska Constitutional Convention of 1919-20. The pardoning power was the subject of several proposals, and members expressed concern about the great number of pardons and conditional paroles being granted by the various governors. Thus, a Board of Pardons—consisting of the Governor, Attorney General, and Secretary of State—was created. After being amended and transferred to art. IV, § 13, the conditions clause stated:

> Said board, or a majority thereof, shall have power to remit fines and forfeitures and to grant commutations, pardons and paroles after conviction and judgment, under such conditions as may be prescribed by law, for any offenses committed against the criminal laws of this state except treason and cases of impeachment.

The conditions clause was last amended following voter approval in 1968.[36] That amendment required the Legislature to create a law establishing the Board and the qualifications of its members. As we have already stated, this version of the conditions clause gave the Board the "power to grant paroles after conviction and judgment, under such conditions as may be prescribed by law, for any offenses committed against the criminal laws of this state except treason and cases of impeachment." A parole statute in effect at that time stated in part that "[n]o such parole shall be granted in any case

---

[34] *Id.*

[35] *Id.*

[36] See 1967 Neb. Laws, ch. 319, §§ 1 through 3, pp. 852-53.

unless the minimum term fixed by law for the offense has expired . . . ."[37]

As early as 1893, there was a law conditioning parole eligibility on the serving of a minimum term. And the two constitutional provisions which expressly referred to parole authorized paroles to be granted "under such conditions as may be prescribed by law." A law governing parole eligibility—such as § 83-1,110—is such a condition prescribed by law.

We must resolve all reasonable doubts in favor of the constitutionality of § 83-1,110. Having done so, we conclude that Adams has failed to meet his burden of clearly establishing that the statute is unconstitutional.

## CONCLUSION

Under the conditions clause, the Board has the power to grant paroles for any offenses except treason and cases of impeachment, subject to conditions established by the Legislature. Section 83-1,110(1) imposes such a "condition," making an offender serving a life sentence ineligible for parole consideration until the sentence is commuted. We conclude the statute does not infringe on the Board's authority to grant paroles for any offenses. We affirm the decision of the district court dismissing Adams' complaint.

AFFIRMED.

STACY, J., not participating.

---

[37] Neb. Rev. Stat. § 29-2623 (Reissue 1964).